VICKSBURG AND MERIDIAN RAILROAD COMPANY *v.* H. O. DIXON.

RAILROAD.    *Cattle guard.    Estoppel.*

   A railroad company which neglects when notified to mend a cattle guard across its road-bed is not liable for damage resulting to a crop, although it has for thirty years repaired the guard, which it built at the request of the protected landowner.    CHALMERS, J., dissented.

APPEAL from the Circuit Court of Hinds County.

HON. T. J. WHARTON, Judge.

In this action for the destruction of the appellee's crops by hogs a jury was waived, and the court gave judgment against the appellant upon the following state of facts : When the land was wild, a right of way was purchased for the railroad.    Afterward the appellee bought property on either side of this grant, and in 1853 began to deaden the forest.    He inclosed his clearing with a fence, and at his solicitation the appellant constructed cattle guards in its road-bed at the points where it entered and left the field.    These guards were kept up by the railroad company, which had them constructed in such a manner as to protect the land and allow the trains to pass.    On one occasion the appellant, when notified, failed to repair the guards immediately, and the appellee stationed a watchman there, whose wages the company paid.    A man who owned some porkers lived beside the appellee's close, where a crop of oats was growing, when, in March, 1882, the guards were burned by gypsies.

The appellee notified the officers of the railroad before the swine found this entrance, but the company neglected to mend the breach for a time, and the hogs, coming through, destroyed the oats before the gap was closed.

*Nugent & McWillie,* for the appellant.

Cattle guards at farm crossings are matters of contract. Part of the damages usually assessed for the right of way is the value of the fencing on each side of the railroad. An economical mode of providing for this is to construct the guards. *Quimby* v. *Vermont Central Railroad Co.,* 23 Vt. 387 ; *Morss* v. *Boston and Maine Railroad,* 2 Cush. 536. Unless the track is required by statute to be fenced, the company is not bound to make these structures. *Nelson* v. *Vermont Railroad Co.,* 26 Vt. 717. The whole subject of cattle guards at road and farm crossings rests upon statutory law ; railroad companies are not bound at common law to fence their tracks so as to exclude live stock. *Perkins* v. *Eastern Railroad Co.,* 39 Maine 307 ; *Chapin* v. *Sullivan Railroad Co.,* 39 N. H. 53 ; *Morse* v. *Rutland Railroad Co.,* 27 Vt. 49 ; *Tower* v. *Providence Railroad Co.,* 2 R. I. 404 ; *Eames* v. *Salem Railroad Co.,* 98 Mass. 560 ; *Corwin* v. *New York Railroad Co.,* 13 N. Y. 42 ; *Vandegrift* v. *Rediker,* 2 Zabr. 185, 188 ; *Pennsylvania Railroad Co.* v. *Riblet,* 66 Penn. St. 164; *Indianapolis Railroad Co.* v. *Harter,* 38 Ind. 557; *Alton Railroad Co.* v. *Baugh,* 14 Ill. 211 ; *Henry* v. *Dubuque Railroad Co.,* 2 Iowa 288 ; *Locke* v. *St. Paul Railroad Co.,* 15 Minn. 350 ; *Stucke* v. *Milwaukee Railroad Co.,* 9 Wis. 202. The legislature has not required cattle guards in this State, and the payment for the fence was made when the right of way was purchased. In this view the legislature has no power to compel the erection of cattle guards. *Manning* v. *Eastern Counties Railway Co.,* 12 M. & W. 235 ; *Illinois Central Railroad Co.* v. *Bloomington,* 76 Ill. 447 ; *Morris Canal Co.* v. *State,* 4 Zabr. 62. No estoppel can result from the defendant's acts in keeping up the guards for so long a time. *Turnipseed* v. *Hudson,* 50 Miss. 429 ; *Staton* v. *Bryant,* 55 Miss. 261 ; *Davis* v. *Bowmar,* 55 Miss. 671. To constitute an estoppel by non-assertion, it must appear that the party knowing his rights was culpably negligent in

failing to claim them; that the other party had no knowledge or means of acquiring knowledge of the true state of the case, and that he relied upon the admission to his injury. *Biddle Boggs* v. *Merced Mining Co.,* 14 Cal. 279; *Green* v. *Prettyman,* 17 Cal. 401. There must be deception, and change of conduct, in consequence, to estop a person from showing the truth; and the acts of a person done in ignorance of his rights will not operate as an estoppel unless others have acquired rights on the faith of them. *Andrews* v. *Lyons,* 11 Allen 349; *Hazelton* v. *Batchelder,* 44 N. H. 40; *Newman* v. *Edwards,* 34 Penn. St. 32; *Brubaker* v. *Okeson,* 36 Penn. St. 519. The rule announced in the case of *Vicksburg Railroad Co.* v. *Patton,* 31 Miss. 156, is modified by the wire fence law, Acts 1882, p. 211, and owners of swine are now bound to keep them from running at large.

*H. C. Fairman,* for the appellee.

The right of way is only an easement, a privilege distinct from ownership of the soil. *Williams* v. *Western Union Railway Co.,* 50 Wis. 71; Redfield on Railways, § 69. Dixon owns the land, subject to the right of the railroad company to pass over it, in the prosecution of its business, in such a manner as to inflict no unnecessary evils upon him. The cattle guards avoid the building and maintaining of two lines of fence, and enable the landowner to have a single field. If the fences were built, the company would be compelled to pay half the cost. Such is the equitable rule. *Quimby* v. *Vermont Central Railroad Co.,* 23 Vt. 387; *Trow* v. *Vermont Central Railroad Co.,* 24 Vt. 487; *In re Rensselaer and Saratoga Railroad Co.,* 4 Paige 553; Redfield on Railways, § 127, (5, 6), and notes. If it was not the duty of the company to mend the gap, it is nevertheless estopped to set this up in order to avoid liability for the damage which resulted from Dixon's reliance on the former recognition of this duty. The officers of the road should have notified him before the hogs destroyed his oats that they intended to alter their course of dealing with the guard. Having failed to give the notice, the corporation is estopped in this case to show that it was not bound to repair the break. *Henry* v. *Jones,* 28 Ala. 385; *Mayer* v. *Ramsey,* 46 Texas 371; *Little Rock and*

*Napoleon Railroad Co.* v. *Little Rock and Texas Railroad Co.*, 36 Ark. 664; *Taylor* v. *Zepp*, 14 Mo. 482; Story Eq. Jur., §§ 1520, 1536 notes. The mischief is accomplished, the estoppel is complete, and the company cannot now retract. *Turnipseed* v. *Hudson*, 50 Miss. 429; *Vicksburg Railroad Co.* v. *Ragsdale*, 54 Miss. 200. Injury has resulted to Dixon from his reliance upon the faith of the company's former conduct. *Davis* v. *Bowmar*, 55 Miss. 671. The hog law is inapplicable to the facts, because the porkers were not outside of their owner's inclosure, but the broken guard was a portion of the partition fence. No relief from the duty of maintaining the guard resulted from this statute, and the company is liable for the injury.

CAMPBELL, C. J., delivered the opinion of the court.

No obligation rested on the railroad company to construct cattle gaps for the accommodation of the appellee. It was a mere favor to him that the gaps were made at his request. They were wholly for his advantage, and the favor done him by the company in making them and repairing them from time to time did not impose any obligation on the company to continue this course. The mistake of the appellee in supposing he had a right to have the cattle gaps kept in order by the appellant did not give him such right, and if the appellant thought itself bound to keep them up, its misapprehension did not create the obligation. A repetition of favors for accommodation cannot constitute a foundation for a valid claim to their enjoyment as a right. The course of dealing between the parties about the cattle gaps did not affect the question of right or liability with respect to them. The appellee knew they were constructed at his request as a favor to him, and although they were repaired several times by the company, and once he was reimbursed for the expense of a guard he employed at the gap while waiting its reconstruction, he was well aware of all the facts, and the law imputes to him a knowledge of the non-liability of the company for the maintenance of the cattle gaps, and it is his misfortune to have relied on the appellant to render him a service for which he had no legal claim on it.

The moral equity of appellee's claim may seem strong, but a legal right cannot be founded merely on the hardship of not recognizing it.   Unless the appellant was legally bound to repair the gap, it was not liable for not doing it.   It certainly was not originally bound to construct these appliances for the benefit of the appellee. Did the obligation arise subsequently because of the generosity of the original favor ?   Shall a succession of favors by the mere process of addition sum up a right as their result?   Did the appellee acquire a vested right to be further accommodated ?   The sole claim of the appellee against the appellant is that the cattle gaps should have been kept up by the latter, because they had formerly been. He had been led to rely on a continued enjoyment of the favor, because it had never been denied him.   He was disappointed that the appellant did not promptly respond to his request to repair the broken gap, and it may be truly said that the course of the appellant had led him to expect that it would promptly repair it, but as there was no legal obligation on the appellant, its failure imposed no liability.   It was an instance of disappointed expectation of a continuance of favors not before denied.   The consequence of such disappointment must always be submitted to without complaint, because the sufferer is without any right.   Having no right, he is without remedy.

*Reversed and remanded.*

CHALMERS, J., delivered the following dissenting opinion.

Without regard to the question of whether it was originally the duty of the railroad company to erect and maintain the cattle guard I think it plain, on principles of estoppel, that it was bound in this case to have either rebuilt it or given the appellee seasonable notice that it did not intend to do so.   When Dixon cleared and fenced the land, more than thirty years ago, he called upon the railroad authorities to build the cattle guard, so that cattle might be prevented from getting into his fields.   They, at once and without objection, complied with his demand; giving no intimation whatever that he had no legal right to make such demand.   They have maintained it continuously from that day to this.   It has frequently rotted

away or been destroyed in the long lapse of years which has intervened, and as fast as the decay or destruction has been observed by them, or notified to them by Dixon, they have promptly repaired it. Upon one occasion, when they were slow in doing this, Dixon stationed a guard at the gap for the purpose of keeping out the cattle, and the expense of the guard was without objection paid by the railroad company.

If all this had been understood by both parties to be a gratuity conferred by one and received by the other, I admit that no rights or obligations could spring from it, since no man can base any legal expectation of continued favors in the future from any number of gratuitous favors in the past; but there is not the slightest hint in the record that either party has considered these acts as mere gratuities. It is quite certain that Dixon thought that the railroad company was only doing that which they were compelled by law to do, and he only receiving that which he was entitled to. I think it clearly deducible from the facts that the railroad company coincided in this opinion. They seem to have remained of this opinion until this suit was brought, for they actually repaired the cattle guard upon notice from Dixon on the occasion which gave rise to this suit. They were slow in so doing, and the loss to Dixon occurred during this delay. They received his demand upon this occasion, as upon all others, without objection, and without the least intimation of dissent; and their defense now upon the ground that they owed no legal duty to Dixon is manifestly an afterthought.

I decline to consider whether the law originally or during all these years required them to keep up the cattle guard built and maintained by them in the middle of their road-bed and an interference with or repairs of which by Dixon would, I doubt not, have been prevented by them as being dangerous to the safety of their trains. If they had known all the time or had just discovered that no law compelled them to do what they have been doing at Dixon's command for thirty years, they must have known that Dixon did not so regard it; and the plainest principles of fair dealing required that, when the latter called upon them again to repair, they should notify him of their intention not to do so. But, in

truth, they then had no such intention; and it was only when they were called upon to make amends for neglect, in promptly doing that which both parties believed to be their duty, that they changed front and repudiated the obligation. I do not think I ever knew a plainer case for the application of that wholesome principle which forbids a man to claim his legal rights when by his conduct he has misled another to his detriment as to what those rights were. It has repeatedly been held that a man who in ignorance of his own title to land has induced another to buy it, is estopped thereafter to claim it. I do not think that the railroad company has estopped itself to claim that no law compels it to maintain cattle guards; but I do think it clear that they were bound to notify Dixon of their intention not to repair, so that he might have taken steps to protect himself; and that not having done this, they were responsible for the loss sustained. This conclusion seems the more irresistible when we consider the fact known to everybody, that the railroads in this State have always maintained cattle guards on their tracks when traversing cleared lands, and that no prudent railroad company would for one moment entertain the idea of permitting these erections to be tampered with or repaired by the farmers of the country. Such a course might and probably would soon result in the destruction of their trains. While no contract to keep up the cattle guard by the railroad company has been proved, it may, I think, be safely presumed from the long and uniform conduct of the parties.