72   491
74   179
72   491
78   449

KANSAS CITY, MEMPHIS & BIRMINGHAM RAILROAD CO. *v.* J. J.
SPENCER ET AL.

1. RAILROADS.  *Cattle guards.*  Code 1892, § 3561.  *Police power.*

Section 3561, code 1892, requiring railroads to construct and maintain
proper stock gaps and cattle guards, is intended to secure safety of
travel as well as the property rights of cattle owners, and is a legiti-
mate exercise of police power.

2. SAME.  *Cattle guards and crossings.*  *Penalty.*  *Single recovery.*

Under said section, requiring cattle guards where the track passes
through inclosed land, and the maintenance of suitable crossings
for necessary plantation roads, providing that "for any failure so
to do" the company shall pay $250, the penalty is not given for
each failure.  Only one recovery can be had for failure to maintain
both cattle guards and crossings, if within one inclosure.

3. SAME.  *Suit for penalty.*  *Continuing right.*

But the right to sue is a continuing one, and the penalty may be re-
covered as often afterwards as other instances of failure occur.

4. SAME.  *Farm crossings.*  *Suit for penalty.*  *Plaintiff's title to land.*

In an action to recover the penalty imposed by § 3561, code 1892, on
a railroad company for failure to maintain crossings for necessary
plantation roads, the character of plaintiff's title to the land on
either side of the track, whether in fee or as tenant at will, is
immaterial.

5. SAME.  *Suit for penalty.*  *Actual damages.*  *Joinder of counts.*

Where a railroad company fails to maintain cattle guards as required
by § 3561, code 1892, the penalty prescribed and actual damages
caused by such failure may be recovered in the same action.

6. SAME.  *Cattle guards.*  *Sufficiency.*  *Crossing right of way.*

A cattle guard across the track, with a wing or frame extending
eight feet on either side and not across the right of way, does not
meet the requirement of the statute.  Such guards must extend
across the entire right of way, unless the adjoining owner has
waived the requirement by contracting to maintain fences up to
shorter ones.

7. EVIDENCE. *Opinions. Sufficiency of cattle guards.*

>  In a suit against a railroad company for failing to maintain proper
>  cattle guards, witnesses, though experienced in railroad building,
>  cannot give their opinions as to the sufficiency of the guards in
>  question. Testimony should be confined to their actual condition,
>  leaving the jury to decide whether they are sufficient.

FROM the circuit court of Benton county.

HON. EUGENE JOHNSON, Judge.

Action begun May 6, 1893, by J. J. Spencer and wife against
the Kansas City, Memphis & Birmingham Railroad Company,
to recover of defendant the statutory penalty for failure to con-
struct and maintain certain cattle guards and a crossing for a
plantation road.

Plaintiffs owned a tract of land, on which their residence was
situated, adjoining the railroad on the north side. They did
not own any land south of the railroad, but had been in pos-
session of a tract on that side, of about thirty acres, as tenants
at will, since January, 1892. This land extends to the railroad
right of way, and is immediately opposite the land of plaintiffs.
The land was bounded on the east by a public road which
crosses the railroad. That owned by plaintiffs, and that oc-
cupied by them on the south of the railroad, is inclosed, and
there is a fence along the south side of the railroad right of
way. The land south of the railroad is used as a pasture. The
road bed is about on a level with the surface of the ground.
A small creek or branch crosses the public road just north of
the railroad, and runs in a southwesterly direction across the
railroad and through the land occupied by plaintiffs south of
the right of way. The declaration contains three counts. In
the first count plaintiffs claim $250 statutory penalty for failure
to maintain a suitable crossing inside of the inclosure for a nec-
essary plantation road. In the second count they claim $250
statutory penalty for failure of defendant to construct and main-
tain a stock gap, or cattle guard, of sufficient length on the
right of way, where the fence crosses the track at the east side

of plaintiffs' land.   In the third count plaintiffs demand $100 · actual damages alleged to have been sustained by the trespassing of cattle in consequence of the failure of defendant to construct and maintain a proper cattle guard.

Defendant pleaded the general issue and several special pleas, upon which issue was joined.   It was averred, in the second special plea, that there was a public crossing just east of plaintiffs' land, and a private crossing about one-quarter of a mile west of the public road, on the land of one Gibson;   that there was no plantation road in plaintiffs' inclosure, and that there was no necessity for such a road or crossing;   that the land south of the road was only used as a pasture, and that stock could easily pass over the track at any point.   In the third plea defendant alleged that it had constructed all necessary and proper stock gaps and cattle guards where its railroad passes through plaintiffs' inclosure.   In the fourth plea defendant averred that the damages sustained by plaintiffs, if any, resulted from their failure to erect proper fences, and not from the failure of defendant to maintain proper cattle guards.

On the trial plaintiffs introduced testimony tending to show that several years previously there was a crossing over the railroad for a necessary plantation road at the point where it was demanded a crossing should be made, and that there were signs of an old road going from the residence to this point. Plaintiffs' testimony also tended to show that the cattle guards were out of repair just before the trial, and that there was a ditch, on the north side of the railroad right of way, some two feet wide and two feet deep.   It was shown that the cattle guards are constructed as follows: A pit is dug in the embankment, at each end of which is placed a sill, and on top of this are stringers, upon which are laid, close together, cross-ties with sharp, beveled edges, and upon these the iron track is laid.   A panel eight feet in length is attached to each side of the cattle guard, this panel slopes up to a height of five feet, and there is what is called a wing attached, to prevent stock from passing

over the same.   The testimony showed that on the north side of the railroad, at the east cattle guard, the fence of plaintiffs, while extending to the right of way, lacked some distance of connecting with the panel attached to the cattle guard.   It appeared that plaintiff, J. J. Spencer, first asked for a water gate to connect his fence to the cattle guard at this point.

The testimony further showed that the only use plaintiffs had for a crossing, except for pasturing stock, was to haul rails to repair the fences on the land south of the railroad; that they could enter this land at any point on the public road, but to get to that part of the same north and west of the creek it would be necessary to make a bridge over the creek.

Defendant introduced witnesses, who testified that they had large experience in railroad building, and that the cattle guards in question were properly constructed and were in first-class condition; that they were constructed as is usual on defendant's railroad and on other railroads; and that it was usual for farmers to attach their fences to the cattle guards thus constructed. Defendant also offered testimony to the effect that plaintiffs made no complaint about the cattle guards, but ·wanted the railroad company to put in a water gate between his fence and the cattle guard on the north of the railroad.

After the testimony was closed, plaintiffs asked the court to grant a peremptory instruction, directing the jury to find in their favor for the sum of $250 for the failure to make and maintain proper cattle guards.   This was refused.   Plaintiffs then asked an instruction authorizing the jury, if it believed the defendant had failed to maintain such cattle guards as would reasonably turn stock, to find in their favor in the sum of $250 for each failure.   This instruction the court so modified as to restrict the jury to a verdict of $250 on all the counts, even if the defendant had failed in maintaining both cattle guards and the road crossing.   At the instance of plaintiffs, the court was requested to instruct the jury that the defendant was required to maintain cattle guards on either side of plaintiffs' inclosure

where the railroad crosses, and that such cattle guards should be so constructed as to reasonably prevent stock from entering plaintiffs' land through or over them; and that if the defendant had failed to maintain such cattle guard, the jury should find for the plaintiffs, for any such failure, in the sum of $250. The court gave this instruction, after adding to it that the jury could only find for plaintiffs, on all the counts, one penalty of $250.

The court refused a peremptory instruction asked by defendant. It granted an instruction that defendant was only required to erect such cattle guards as are usually constructed on the defendant's road, and on other railroads in Mississippi. It also instructed for the defendant, that if plaintiffs had convenient access to their land over the public crossing, and that there was no necessity for the plantation road, plaintiffs were not entitled to recover.

The jury found for plaintiffs in the sum of $250 for failure to construct the road crossing, and judgment was entered accordingly. Defendant's motion for a new trial was overruled, whereupon it excepted, and embodied all the evidence in a bill of exceptions. Plaintiffs also made a motion for a new trial, averring that the court had erred in the instructions and in excluding evidence as to damages sustained by the trespass of stock going upon their land through the defective cattle guards; and in admitting evidence by defendant's witnesses as to the usual manner of constructing cattle guards. Defendant appealed, and plaintiffs prosecuted a cross appeal.

Section 3561, code 1892, under which the suit was brought, is as follows: "It is the duty of every railroad company to construct and maintain all necessary or proper stock gaps and cattle guards where its track passes through inclosed land; and to make and maintain convenient and suitable crossings over its track for necessary plantation roads. For any failure so to do the railroad company shall be liable to pay $250, to be recovered by the person interested.

By an act approved March 13, 1884 (Laws, p. 42), railroad companies were required to construct and maintain sufficient cattle guards in passing through inclosed land, and to make and keep in repair crossings for necessary plantation, roads. This was the first legislation in the state on the subject. The act continued in force until the code of 1892 went into effect. Appellant was chartered February 11, 1886.

The opinion contains a further statement of the case.

*Wallace Pratt* and *Buchanan & Minor*, for appellant.

1. The proof wholly fails to show that there was a necessary plantation road for which a crossing should be constructed. Plaintiffs did not own the land south of the road, but merely occupied it as tenants at will, and used it only for pasturage. The land was accessible from the public road on which defendant maintained a crossing. By putting a bridge over the small stream plaintiffs could go from the public road to any part of this land. Besides all this, the testimony shows that there was a crossing on the land of Gibson, only a short distance west of the public road. The statute in question, § 3561, code 1892, is highly penal, and will be strictly construed. In addition to the expense of maintaining these crossings, it is to be remembered that they add much to the danger of operating the railroad. Here the track was nearly on a level, and there was no difficulty about crossing it, at any point, in order to reach the pasture. Taking into consideration all the circumstances, it is submitted that the proof fails to show that there was a necessary plantation road, within the meaning of the statute.

2. We hold the statute is unconstitutional, and that a peremptory instruction should have been given for defendant. The statute was not enacted until the adoption of the code of 1892, long after the defendant's road was constructed. The act of 1884 is wholly different from the code provision. That act only applied to inclosed lands, and provided a varying penalty, by way of punishment merely, while the code provides a fixed

penalty of $250. In order to maintain the statute as to exist-ing roads, the constitutional provision that private property cannot be taken without compensation would be violated. It does not come within the police power. On the point that the statute is unconstitutional, we refer to the following authorities: 17 Fed. R., 109; *People* v. *Railroad Co.*, 79 Mich., 491, s.c. 42 A. & E. R. R. Cas., 258; *Railroad Co.* v. *Rowland* (Tex.), 35 *Ib.*, 286; *Railroad Co.* v. *Ellis, Ib.*, 292; *Railroad Co.* v. *Bloomington*, 76 Ill., 447, s.c. 32 A. & E. R. R. Cas., 276, and note; *Railroad Co.* v. *Plymouth Co.*, 14 Gray (Mass.), 55; *Railroad Co.* v. *Middlesex*, 1 Allen (Mass.), 324; *People* v. *Railroad Co.*, 52 Mich., 277; *Railroad Co.* v. *Hough*, 61 *Ib.*, 507; *Crossleigh* v. *O'Brien*, 24 Ind., 325, s.c. 87 Am. Dec., 332. Of course the state may provide that in all future cases railroads in acquiring lands for right of way, shall take them with the condition that necessary crossings shall be erected; then, in estimating damages in condemnation proceedings, this would be considered.

We submit that *Railroad Co.* v. *Villenborg*, 117 Ill., 203, cannot be relied upon as authority to sustain the statute in question. A great deal that was said in that case was not nec-essary to the decision of the question involved. The better reasoning appears in the earlier case in that court, *Railroad Co.* v. *Bloomington*, 76 Ill., 447. The only other case which can be cited in opposition to our contention is that of *Railroad Co.* v. *Commissioners*, 79 Me., 236, s.c. 32 A. & E. R. R. Cas., 232. There the only question involved was the right of the state to alter or amend the charter of a railroad company. No such question is involved here, and the case is not in point.

3. Responding to the argument on cross appeal, we sub-mit that the court ruled correctly as to the cattle guards. It held that, as the testimony showed these were of the character generally used on railroads in the state of Mississippi at the time of the passage of the law, the presumption is that they are the cattle guards required by the statute. The undisputed

testimony is that planters along the line of the different railroads attach their fences to the panel on each side of the cattle guards. This is the general custom. Here the plaintiffs not only insisted that the cattle guards should be maintained, but that the railroad company should furnish a water gate. The contention that the cattle guards were out of repair was manifestly an afterthought. In fact, the testimony does not go to show that the cattle guards were out of repair when the suit was instituted, or before that time.

We again urge that the statute under which this recovery is sought, is highly penal, and that the same should be strictly construed. The plaintiffs must bring themselves clearly within its terms. The fact that the railroad company has put in cattle guards, at the request of plaintiffs, does not give them a right to insist that they shall be maintained. 61 Miss., 119.

We submit that the case does not, in any event, come within the terms of the statute so far as the east cattle guard is concerned, for the testimony shows that the land was not inclosed— that is, there was a space of more than forty feet in which the fence did not reach the cattle guard.

The court properly held that in no event could the plaintiffs recover more than one penalty of $250. The statute does not give a separate penalty for each failure. The penalty is for failure to construct and maintain necessary and proper cattle guards and suitable crossings. If the statute contemplated a separate penalty for a failure in each instance, it would be so stated.

*C. Lee Crum*, for appellees, Spencer and wife.

1. Section 3561, code 1892, gives the right to recover thereunder to "any person interested." Plaintiffs, being owners in fee of the land north of the road, and tenants at will of that south of it, all being under fence, were certainly interested in the crossing and the cattle guards. The character of plaintiffs' title to the land is wholly immaterial.

2. The question of the necessity for the road crossing was for the determination of the jury on the evidence, and the verdict is conclusive.

3. The term "proper cattle guard," used in the statute, means such appliances as will prevent ordinary animals from going upon the inclosed land. A mere pit under the track does not meet the requirements of the law. It is the duty of the railroad company to erect cattle guards extending entirely across the right of way. 3 Am. & Eng. Enc. L., p. 43, note; 7 *Ib.*, 912, 913; 61 Iowa, 467; 31 Kans., 337. It was, therefore, aside from the question to show that the cattle guard in question was such as was ordinarily constructed in this state. The court should have given a peremptory instruction in favor of plaintiffs on this question. Every failure to construct and maintain proper cattle guards at each fence of an inclosure, or to make and maintain a convenient crossing for a necessary plantation road, subjects the defendant to the statutory penalty.

4. The penalty of $250 is intended as a punishment for failing to construct and maintain proper cattle guards and road crossings; it has no reference whatever to the actual damages sustained by the party complaining, and is not in lieu thereof. 7 Am. & Eng. Enc. L., p. 914; 60 Tex., 210. Therefore, the court erred in excluding plaintiffs' evidence as to actual damages caused by animals going through the defective cattle guards.

5. Section 3561, code 1892, is a proper exercise of the police power. See §§ 6, 190, const. 1890.

*Brame & Alexander*, on the same side,

Being interested in a case on appeal, involving the question as to the constitutionality of § 3561, code 1892, by permission of the court, filed a brief in support of the statute, citing the following authorities: *Stone Co.* v. *Railroad Co.*, 130 N. Y., 152; *Beardsley* v. *Railroad Co.*, 142 *Ib.*, 173; *State* v. *Railroad Co.*, 85 Iowa, 517; *Thorpe* v. *Railroad Co.*, 27 Vt., 140; *Railway*

*Co.* v. *Emmons*, 149 U. S., 364. The duties sought to be enforced by the statute are not purely private ones, but grow out of the obligation which the railroad company owes to the public, in return for granted rights. Obedience to the statute is essential to the safety of passengers and employes, as well as for the protection of private property.

When appellant obtained its charter, in 1886, the act of 1884 (Laws, p. 42) was in force. Subject to this act, the contract contained in the charter of appellant was made, and under it the duty was imposed to maintain proper cattle guards and farm crossings.

It is immaterial that the penalty imposed by the code of 1892 is different from that which existed under the act of 1884. See *Railway Co.* v. *Emmons, supra,* which affirms the right of the state to enforce obligations of this character by any necessary penalties, regardless of charter provisions of the railway company. This change in the penalty violated no charter right, but was a proper exercise of the state's power to supervise railroads. Indeed, the charter of appellant was obtained and its railroad constructed after the enactment of our general law for the supervision of railroads.

It is not to be assumed that the absence of the crossing was estimated in the damages for compensation in condemnation proceedings. *Beardsley* v. *Railroad Co., supra.* See, also, the well reasoned opinion of the Canada supreme court in *Vezina* v. *Queen,* 44 Am. & Eng. R. R. Cases, 73.

Argued orally by *J. W. Buchanan,* for appellant, and *C. H. Alexander,* on the side of appellees.

WHITFIELD, J., delivered the opinion of the court.

The requiring a railroad corporation, incorporated before or after the act containing the requirements is passed, to construct and maintain "proper stock gaps and cattle guards," is a perfectly legitimate exercise of the police power of the state.

Nothing can be added to the completeness and conclusiveness of the reasoning of Chief Justice Redfield on this precise question in *Thorpe* v. *Railroad Co.*, 62 Am. Dec., 625. The same doctrine is expressly announced in *Railway Co.* v. *Emmons*, 149 U. S. (56 Am. & Eng. R. R. Cas., p. 169); *Gorman* v. *Railroad Co.*, 72 Am. Dec., 220; 2 Morawetz on Private Corporations, §§ 1067, 1073; *Trow* v. *Railroad Co.*, 58 Am. Dec., 191; *Railroad Co.* v. *Tilton*, 74 Am. Dec., 195; *Railroad Co.* v. *Waldron*, 88 Am. Dec., 100; *Norris* v. *Railroad Co.*, 63 Am. Dec., 621; *Wilder* v. *Railroad Co.*, 20 Am. Rep., 698; *Railroad Co.* v. *Crider*, 91 Tenn., 489 (19 S. W., 618); *Grissell* v. *Railroad Co.* (Conn.), 1 Am. St. Rep., 149, note (9 Atl., 137), with authorities; and *Brentner* v. *Railway Co.* (Iowa), 7 Am. & Eng. Ry. Cas., note at page 578 (12 N. W., 615). The purpose of such legislation is not merely to protect the property rights of the owners of cattle injured or killed, but to secure the safety of travel on railroad cars. The methods to secure this are for legislative discretion.

Whether the same rule applies to farm crossings or not is immaterial here, because appellant's road was not constructed till A.D. 1886, and the same provision, both as to cattle guards and farm crossings, found in § 3561, code 1892, is found in Laws 1884, p. 42.

On the cross appeal, cross appellants present two questions: First, whether the charge is correct wherein the court informed the jury that, if there should be a failure to construct and maintain "proper cattle guards," the penalty of $250 could be recovered; or, for a failure to construct and maintain necessary crossings for plantation roads, the penalty could be recovered; but that, although there might be a failure to construct and maintain both "proper cattle guards" and "suitable and convenient crossings for necessary plantation roads," whether one or more of each, provided all such cattle guards and crossings for plantation roads were on one tract of inclosed land, there could only be one penalty of $250 recovered. The language

"any failure so to do," under the strict construction applicable in case of penal statutes, we do not think equivalent to "each failure to construct and maintain each cattle guard," etc. The instruction is correct. See *Bissell* v. *Railroad Co.*, 67 Barb., 392; *Railroad Co.* v. *Green*, 27 Am. Rep., 718, and note.

The fact that the farm crossing was from land owned in fee to land used by appellees as tenants at will makes no difference. Section 3561 does not characterize the necessary title.

The second question presented by the cross appeal is as to the action of the court in denying plaintiff below the right to recover actual damages sustained by reason of cattle having gotten through a defective cattle guard and injured his crops. The cattle guards, in this case, were not constructed over the whole width of the right of way of appellant, but were merely pits under the roadbed, to which adjoining owners of land joined their fences. Testimony was introduced, through Moss and other witnesses, for defendant below, which, in part, went to show the actual condition of the cattle guards at the time of the injury complained of, and part of which consisted of the opinions of such witnesses as to how cattle guards should be constructed. For the first purpose the testimony was competent; for the second, incompetent. *Railroad Co.* v. *Edwards*, 7 Am. & Eng. R. R. Cas., 547; *Railroad Co.* v. *Ritz*, 19 Am. & Eng. R. R. Cas., 611; *Smead* v. *Railroad Co.*, 23 Am. & Eng. R. R. Cas., 241; 1 Rorer on Railroads, p. 643; 2 Rorer on Railroads, p. 1407, note 2. As said by the court in *Ritz's Case, supra,* "a jury, coming as it does from the body of the people, many of whom are necessarily familiar with the habits of domestic animals, and with what is necessary to restrain them, is probably more capable of determining whether a cattle guard is proper and sufficient to prevent stock from crossing it than the man who is experienced only in building cattle guards." Cattle guards must be effectual to keep cattle from the track. *Railway Co.* v. *Porter*, 20 Am. & Eng. R. R. Cas., note at p. 448, with authorities. In *Heskett*

v. *Railroad Co.*, 13 Am. & Eng. R. R. Cas., p. 551, the court say: "The term 'cattle guards' has no peculiar signification. In the sense in which it is employed in the statute, it means such an appliance as will prevent animals from going upon the land adjoining the right of way. A pit under the track does not meet the requirements of the law. We think a proper cattle guard, under the facts of this case, imports a guard, or protection extending the whole width of the right of way." *Railroad Co.* v. *Manson* (Kan.), 2 Pac., 800; *Railway Co.* v. *Morrow* (Kan.), 4 *Ib.*, 87. The fact that landowners may join their fences to the cattle guard by permission of the railroad company, does not alter this. Even where, as in *Railroad Co.* v. *Young*, 13 Am. & Eng. R. R. Cas., p. 547, the landowner was, by statute, allowed to build the cattle guard at the expense of the railroad, which had failed to build it, it is said that the "right of the landowner to enter upon the railroad's right of way, and to in any manner interfere with it, is permissive only, without which interference would be a trespass"—a right which he "may exercise or not at his option, without liability to be charged with contributory negligence, if he elects not to exercise it." Of course, "where the owner contracts himself to maintain fences [up to the cattle guard, for instance], this will be held to be an implied waiver of the obligation of the railroad company to do so." See exhaustive note at p. 580 of *Brentner* v. *Railway Co.* (Iowa), 7 Am. & Eng. R. R. Cas.; 3 Wood on Railways, p. 1560. But no such agreement appears in this record. The cattle guard should extend the whole width of the right of way. It is otherwise not a cattle guard, but a cattle trap.

The theory of the court below in refusing to allow proof of actual damages must have been either that it was not competent to join in the same declaration a count for the penalty provided by § 3561, and one for actual damages, or that the penalty was in lieu of actual damages. Certainly in our state, where forms of action are abolished, at least in a case like this,

where the whole injury inflicted arose out of the same transaction—the failure to maintain a proper cattle guard—the causes of action are not improperly joined.    In *Hodges* v. *Railroad Co.* (decided in February, 1890), 105 N. C., 170, it was held that a cause of action in tort and one in contract could be joined where the whole damage arose out of the same transaction. *Wells* v. *Northhampton Co.* (Mass.), 44 Am. & Eng. R. R. Cas., 494, note.

As to the second point, we have had more trouble.    It is true that the railroad was not bound, in the absence of statute, to construct and maintain cattle guards, or for damage resulting from not constructing and maintaining them.    *Dixon's Case*, 61 Miss., 119.    But, ordinarily, where the statute does not require the company to fence its road, one of the elements of damage awarded the landowner is the amount it would cost him to erect a fence, where the railroad runs through inclosed land.    Now, where the statute, as here, does not require the railroad to fence its track, but to construct and maintain cattle guards at the points of entrance upon and exit from inclosed land, the cattle guards are meant to stand in lieu of the fence, the landowner fencing to the cattle guards.    And in such case, as in this case, the landowner is not awarded an amount for fencing, in the condemnation proceedings, and the railroad is exempted from liability arising from the absence of a fence, on the theory that the railroad will construct and maintain proper cattle guards; and hence, if it shall fail to construct and maintain cattle guards, as a result of which cattle get through and damage the crops of the landowner, the railroad fails in the duty imposed by law, and upon the perfect compliance with which duty only it is exempt from liability for such damage, and, by such failure, becomes responsible for such damages.    The damages awarded in the condemnation proceedings are exclusive if the railroad, in the case stated, shall construct and maintain proper cattle guards; otherwise, the landowner may recover for such actual damages.    As said

in *Brewer* v. *Railroad Co.*, 113 Mass., p. 56, "this is a cause of action wholly independent of the defendant's liability for acts done within the authority conferred by the order of the commissioners [commissioners in condemnation proceedings]. The measure of compensation in such proceedings is the injury which was caused" by what was done "according to the authority given by the order of the commissioners. To this extent the corporation may claim the protection of the authority under which it acted, as against an action at common law. But for anything done in excess of that authority, or unskillfully or negligently done within it, to the special injury of the plaintiff, she may have her action of tort. The plaintiff would otherwise be without remedy. The same point is expressly ruled in the authorities collated in note at page 537 of *Railway Co.* v. *Wachter* (Ill. Sup.), 5 Am. St., and in *Clark* v. *Railroad Co.*, 36 Mo., 220. And see, specially, *Bott* v. *Pratt* (Minn.), 23 N. W., 237, containing a critical review of the authorities, including *Heeney* v. *Sprague*, 11 R. I., 461. Otherwise, manifestly, where great actual damage was inflicted by failure to maintain proper cattle guards—no matter how many on one tract of inclosed land—only one penalty being recoverable for such failure, the plaintiff would be remediless, practically."

We think the penalty, however, is a continuing one in this sense, that, though only one penalty of $250 can be recovered for the failure to construct and maintain proper cattle guards, no matter how many on one tract of inclosed land, up to the time of the first suit for such penalty, yet, such penalty may be recovered as often thereafter as other such similar instances of failure to construct and maintain proper cattle guards shall be shown after such suit. *Railroad Co.* v. *Gill*, 11 L. Rep., Annotated, p. 452. *Parks' Case*, 13 Lea (Tenn.), 1, is by a divided court, Freeman, J., delivering, we think, the sound view. The railroad company, in other words, if, after one successful suit, it fails still to construct and maintain proper cattle

guards, shall be liable to such penalty again, and so on continuously till it constructs and maintains proper cattle guards.

These views sufficiently indicate the principles governing the new trial. This view in no way conflicts with the general rule that, where the statute gives a new right, and provides the remedy, such remedy is exclusive. That doctrine does not apply in the particular case at bar.

*The judgment is affirmed on the direct appeal, but is reversed on the cross appeal, and the cause remanded as to the cross appellants' claim for actual damages. So ordered.*