GULF & SHIP ISLAND RAILROAD COMPANY *v.* J. W. CHAPMAN.

[59 South. 889.]

1. EASEMENTS. *Release. Binding on subsequent grantees. Code* 1906, *section* 4058.

The effect of section 4058, Code 1906, by which is imposed upon a railroad company the duty to construct and maintain stock gaps and cattle guards where its right of way passes through the land of another, is simply to burden such right of way with an easement or servitude for the benefit of the owner of the land through which it passes, the right of way being the servient and the land being the dominant tenement.

2. SAME.

Such an easement or servitude may be released by deed from the owner of the dominant tenement to the owner of the servient tenement, and when so released, it ceases thereafter to be an appurtenance of such dominant tenement, and a subsequent purchaser of such land from the original owner cannot enforce such servitude.

APPEAL from the circuit court of Simpson county.

HON. W. A. HUGHES, Judge.

Suit by J. W. Chapman against the Gulf & Ship Island Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*B. E. Eaton* and *May & Sanders,* for appellant.

The contentions of counsel on behalf of appellee may be summed up as follows:

1st. That the covenant in the right of way deed is not a covenant real and is not binding on the assignee of the covenantor, and that their contention is supported by Spencer's case.

2nd. That Spencer's case is sustained by an unbroken line of decisions, down to the present time.

3rd. And that we are mistaken in contending that the trend of modern decisions is against the rulings announced in Spencer's case.

With all due deference to counsel, we believe that we have already demonstrated that all of their contentions are unsound, but the more completely to vindicate the position taken by us, we shall undertake briefly to analyze the several contentions of counsel.

Their first contention that the covenant in the right of way deed is not a covenant real and not binding on appellee, who was the assignee of the covenantor, necessarily rests upon their second contention that Spencer's case is supported by the authorities, and their other and third contention, that the authorities relied upon by them, constitute an unbroken line of decisions and represent the trend of modern decisions. We shall not undertake to discuss the three contentions separately, but as a whole.

The following cases, relied on by counsel, were decided in the years indicated, to wit:

*G. & C. S. F. R. R. Co.* v. *Smith,* 72 Tex. 122, 2 L. R. A. 288, decided in 1888; *Gibson* v. *Holden,* 115 Ill. 192, 56 Am. Rep. 146, decided in 1885; *Kennedy* v. *Pwens,* 136 Mass. 199, decided in 1885; *Harding* v. *Witty,* 59 Wis. 285, decided in 1884; *Lanelty* v. *Anderson,* 6 Cowan, 307; *Thompson* v. *Rose,* 8 Cowan, 266; *Allen* v. *Culver,* 3 Den. 284; *Talmer* v. *Coffin,* 4 N. Y. 36; *Congelton* v. *Patterson,* 10 East, 138; *Doughty* v. *Bowman,* 11 Q. B. 444, all decided, we believe during the first half of last century. *Hanson* v. *Meyer,* 85 Ill. 321, decided in 1877; *Fort Wayne Water Power Co.* v. *Allen County,* 24 Ind. App. 514, decided prior to 1870; *Lynn* v. *Mt. Savage Iron Co.,* 34 Ind. 603, decided in 1870; *Cook* v. *Milwaukee & St. Paul R. R. Co.,* 36 Wis. 45, decided in 1874; *Brown* v. *Southern Pacific R. R. Co.,* 17 L. R. A. (Ore.) 409, decided in 1899.

The other cases cited, we believe, all antedate in point of time the oldest case to which we have been able to affix the date, by diligently searching the early reports.

As opposed to these decisions, the principal cases relied upon by us, that of *Sexauer* v. *Wilson,* 14 L. R. A. (N. S.) 1, 15 Am. & Eng. Ann. 54, was decided in 1907; *Geiszler* v. *DeGraff,* 82 Am. St. Rep. 679, was decided in 1901; *Kelly* v. *Railroad,* 86 Am. St. Rep. 715, was decided in 1901.

Among the early cases cited by us is that of *Kellog* v. *Robinson,* 27 Am. Dec. 550, decided in 1834. The case of *Hazlet* v. *Sinclair,* 40 Am. Rep. 254, was decided in 1881; and the case of *Hickey* v. *Lake Shore, etc. R. R. Co.,* 46 Am. St. Rep. 545, was decided in 1884.

We believe this is sufficient to show that we were correct in saying that the trend of modern decisions is against certain principles laid down in Spencer's case, and counsel for appellee are mistaken when they maintain otherwise.

Let us see now how the courts of the several states, whose decisions are relied on for appellee, have decided

the same question when it has come before them in other cases.

*Gibson* v. *Holden,* 115 Ill. 192, is relied on by counsel, yet we find in *Brockmeyer* v. *Sanitary District,* 118 Ill. App. 49, it was held not necessary to use the word "assign" in a covenant in order to make it run with the land.

In *Kennedy* v. *Owen,* 136 Mass. 199, it was held that a covenant to make and maintain a division fence did not run with the land, because the deed was not sealed by the grantee, which would not be the rule in Mississippi, because the grantee of a deed, by the acceptance, is bound by the lawful conditions and stipulations contained in it.

In the case of *Bronson* v. *Coffin,* 108 Mass. 175, 11 Am. Rep. 335, the authorities are reviewed at great length, and a covenant similar to that under consideration was held to run with the land, so the Massachusetts case is not authority.

We next note the case of *Harding* v. *Witty,* 59 Wis. 285, in which a covenant to maintain an existing fence was held to run with the land; whereas, one to build and maintain the fence, held not to run with the land. But we find the Wisconsin court, in the case of *Ecke* v. *Fetzser,* 65 Wis. 55, taking a different view and holding that the covenant of a lessor to pay for improvements to be made upon the leased premises by the lessee during the term of the lease, would run with the land and bind an assignee of the lessor, although the assignee was not mentioned in the lease.

The early Tennessee cases, cited by counsel, amount to but little as authorities from that court, in view of the holding in the case of *Doty* v. *Chattanooga Union Railway Co.,* 48 L. R. A. 160, in which it is held that such covenants run with the land and are binding on the assignee, though not named; that the acceptance of such a deed by the grantee binds him to the conditions; and

among other cases cited in this case, is that of *Gilmer* v. *M. & M. R. R. Co.*, 79 Ala. 569, which maintains a similar doctrine; and that of *Dorsey* v. *St. Louis, etc. R. R. Co.*, 58 Ill. 65, in which was involved a deed containing a covenant that the railroad company would make and maintain fences and cattle guards, and shortly after acquiring the right of way deed, with such covenant, the railroad company conveyed its franchise to another road. Dorsey brought an action on the covenant against the assignee, averring that it had notice of the agreement. Demurrer was interposed and sustained, on the ground that the covenant was merely personal and did not bind the assignee. This was held error; that the covenant related to the land and bound the assignee when the legislature conferred upon it the power to purchase the land.

These cases have the approval of the Tennessee court and justify us in saying that that court is for and not against us.

The New York case of *Talmer* v. *Coffin*, 4 N. Y. 36, does not commit the New York court against us in the light of other holdings of that court. *Duffy* v. *N. Y. & H. R. Co.*, 2 Hilt. 496, in which it was expressly held that a covenant by the grantor, in a deed conveying land for a railroad right of way, that he would, for himself and heirs, erect on both sides of the line a sufficient fence, was a covenant running with the land, etc., and that court, in discussing the necessity of the word "assigns" to make a covenant concerning things not *in esse* run with the land, in accordance with the rule laid down in Spencer's case, used the following very pertinent language: "But this nice distinction, originating at a time when it was necessary to use the word "heirs" or other words of inheritance, in a conveyance in order to grant or convey as estate in fee, cannot be now said to exist."

The case of *Hanson* v. *Meyer*, 85 Ill. 321, does not commit the Illinois court against our contention, in view

of the holding in *Brockmeyer* v. *Sanitary District,* 118 Ill. App. 49, *supra.* And the same may be said of the case of *Fort Wayne Water Power Co.* v. *Allen County,* 24 Ind. App. 514, viewed in the light of the holding of the *Midland Railway Co.* v. *Foster,* 129 Ind. 19, 21 Am. St. Rep. 189. And the case of *Newberg Petroleum Co.* v. *Weare,* 44 Ohio St. 604, is not authority for their contention, since the Ohio court took a different view of the question in *Railroad* v. *Bosworth,* 46 Ohio St. 81, 2 L. R. A. 199, in which the court laid down the rule that the use or nonuse of the word "assign" was not material when it may be inferred from the circumstances that such was the intention, but the court held that the purchaser of land, through which a railroad ran, was not bound by his vendor's agreement to fence the railroad, of which he had not actual notice and which was not recorded, from which it may be inferred that the court would have held otherwise if the agreement had been recorded or the assignee had had actual notice.

The case of *Cook* v. *Milwaukee & St. Paul R. R. Co.,* 36 Wis. 45, is controlled by the later case of *Ecke* v. *Fetzser, supra.* And the case of *Cole* v. *Hughes,* 54 N. Y. 444, is offset by the case of *Duffy* v. *N. Y. & H. R. R. Co., supra.*

The early English case of *Gray* v. *Cuthbertson,* 2 Chit. 482, may be said to be fully neutralized by the case of *Munshull* v. *Oakes,* 2 Hurlst. & N. 793, in which the rule in Spencer's case as to the use of the word assign to make a covenant of a thing not *in esse* run with the land, was criticised and its binding effect doubted.

The case of *Brown* v. *Southern Pacific R. R. Co.,* 47 L. R. A. (Ore.) 409, is relied on, but we submit, is not analogous with the facts of the case at bar, in that it was sought in that case, by the railroad company, to escape liability for damages for stock killed by the railroad, because the grantors of the right of way stipulated that they should build the right of way fences along the rail-

road, "or not hold such railroad liable for any damage to stock belonging to us." Of course, there is no analogy between the stipulations in that deed and the one at bar, because by the very terms of the waiver of the damage claim, it was personal, but it is interesting to note that the court in that case commits itself to this proposition.

"In the absence of a statutory requirement, the word assign, or other words of like import, are not necessary to make a covenant run with the land, and that the omission of such words from the deed would not necessarily show an intention that the covenant was merely a personal one, and that the failure to use such word was not controlling, if it could be reasonably inferred from the language of the instrument that the parties thereto intended the covenant to run with the land." We submit that the Oregon case is a very strong one in support of our contention, so far as it is applicable.

From the foregoing, we believe it is demonstrated that the authorities cited in support of appellee's contention do not support it; that the decisions have either been disapproved or overruled, expressly or in effect, by the courts rendering them, in later decisions, in every instance so far as our researches have carried us, except as to the lone case from Texas, decided in 1888.

We beg the court to bear in mind that we are not seeking affirmative relief; we are not trying on this proceeding to compel the doing of any act by the assignee of the covenantor; we are simply setting up the waiver, contained in the right of way deed, of any right to claim damages for failure to erect a cattle guard; and as said by the court in the conclusion of its opinion in the case of *Doty* v. *Chattanooga Union Railway Co., supra,* "There is no contract, therefore, to put anything new upon the land, but rather to use it in a certain manner."

*Willing & Davis,* for appellee.

The only real question in this case is whether the covenants in the deed set forth in defendant's special plea

were personal or covenants real. We submit that, according to the overwhelming weight of authority said covenants were personal to the grantors in the deed and did not run with the land. The court therefore very properly sustained the demurrer to the special plea. In the deed in which the covenants occur the court will see that the grantors bound themselves only and did not bind their heirs and assigns.

The question is clearly and emphatically stated in 11 Cyc. 1084 (Ill.), from which we quote as follows:

"Covenant for heirs and assigns. An heir or assign when not named is not bound by a covenant, except where it relates to a thing *in esse* at the time; and when named he is not bound by a covenant collateral to the land, but only for things to be done on or concerning the land."

In the deed from W. E. and A. J. Owens, the words heirs and assigns are left out. The grantors covenanted only for themselves. The covenant related to a thing which did not then exist. The fence was not *in esse,* but was to be built by the covenantors.

The leading case on the subject of covenants real is Spencer's case, decided more than three hundred years ago.

See 5 Coke, 16a, 1 Smith Leading Cases, 174. That case is directly in point and is decisive of the case at bar.

The Spencer case has been fiercely assailed by counsel for appellants, and they have attempted to show that the later decisions are not in line with the Spencer case. We submit, however, that the Spencer case is sound in principle, and that it has been followed with few exceptions by an unbroken line of decisions for three centuries. Let us examine the Spencer case for a moment. Spencer demised a house and lot to S for years. S covenanted for himself, his executors, and administrators, that he, his executors, administrators, or assigns, would build a brick wall on part of the land demised. S assigned the term to J and J to Clark. Spencer sued Clark

for a breach of the covenant to build the wall. The court by the first resolve held that a covenant only bound the assignee when it was concerning a thing *in esse,* parcel of the demise, not when it related to a wall to be built. By the second resolve, they held that if the covenant had bound the "assignee" by express words, it would have bound the assignee, although it was for a thing to be newly made, as it was to be upon the thing demised; but that if the covenant was for a thing to be done collateral to the land, and did not touch or concern the thing demised, in any sort, as if it were to build a house upon other lands of the lessor, the assignee should not be charged, although the covenant was for the covenantor and his assigns.

In the note on pages 1080 and 1081, 11 Cyc., it is stated by the editor, that the two principles thus settled have always been acknowledged as law; that the assignee when not named is not bound by a covenant, except it relates to a thing *in esse* at the time; and that when named, he is not bound by a covenant collateral to the land, but only on things done or concerning the land.

In 11 Cyc. 1084, note 87, will be found a long list of cases which have followed Spencer's case. Counsel for appellant are mistaken, therefore, when they say that the trend of modern decisions is against the holding in the Spencer case.

We will briefly review a few of the authorities.

It was covenanted in a deed granting the right of way to a railroad that whenever any portion of the land crossing the line of the railroad should be enclosed and used as pasture, the railroad should construct a fence on each side of the right of way. It was held that the covenant did not run with the land, because it related to something that was not *in esse,* and therefore, the assignee of the grantor, not having been named, had no right of action for the breach of the covenant. *C. & C. S. F. R. R. Co.* v. *Smith,* 72 Tex. 122, —— L. R. A. 281.

Where the owners of adjoining properties agree to construct a party wall and one party was to build the wall and the other party was to pay half the costs before he should have the privilege of using it, and it was expressly agreed in the deed that the covenant should run with the land, it was nevertheless held that the covenant was a personal one and did not pass by a grant of the land to the purchaser. *Gibson* v. *Holden,* 115 Ill. 192, 56 Am. Rep. 146. See, also, authorities cited in the note in the latter report.

A covenant to make and maintain a division fence does not run with the land. *Kennedy* v. *Owen,* 136 Mass. 199.

A covenant to maintain an existing fence runs with the land, but not so with the covenant to build and maintain the fence. *Harting* v. *Witty,* 59 Wis. 285.

The covenant to build and maintain a fence a party wall does not run with the land and is only personal. Taylor's Landlord & Tenant, 209; *Lanelty* v. *Anderson,* 6 Cowan, 307; *Thompson* v. *Rose,* 8 Cowan, 266; *Allen* v. *Culver,* 3 Denio, 284; *Talmer* v. *Coffin,* 4 N. Y. 36; *Congleton* v. *Patterson,* 10 East, 138; *Doughty* v. *Bowman,* 11 Q. B. 444.

In *Hansen* v. *Meyer,* 85 Ill. 321, it was held that where a lease stipulated that it should be binding upon the lessor, his heirs, executors and administrators, but said nothing about assigns, the lessee could not maintain his suit against a purchaser of the premises from the lessor. Upon a clause in the lease binding the lessor to pay for certain fixtures and furniture which by the terms of the lease the lessor was to put in the house on the leased premises. In that case the court cited the Spencer case.

In *Ft. Wayne Water Power Co.* v. *Allen County,* 24 Ind. App. 514, the court laid down the rule that a covenant to do a thing not *in esse,* but which was to be done upon the land would not bind the assigns or grantees unless specifically named, and hence could not run with the land.

In *Lynn* v. *Mt. Savage Iron Co.*, 34 Ind. 603, it was held that a covenant by a railroad company in consideration of the grant of land for its right of way to erect walls and other improvements upon the lands demised, was in reference to a thing not then *in esse* and would not run with the land so as to bind subsequent grantee of the railroad company in the absence of express words binding assignees.

In *Dorson* v. *Western Ind. Railroad Company*, 67 Atl. 301, the same doctrine was announced.

In *Thompson* v. *Rose,* 8 Cowan, 266, a covenant by a lessor to pay his lessee without mentioning his assigns for buildings not *in esse* at the time of the demise, but which were erected upon the land during the term was held not to run with the land.

The rule in Spencer's case was also followed by the Ohio court in the case of *Newburg* v. *Petroleum Co.*, 44 Ohio St. 604.

In *Bream* v. *Dickerson,* 2 Humph. 126, it was held that a covenant on the part of the lessor of land on the part of himself and his heirs to pay the lessees, their heirs and assigns at the expiration of the lease the value of such improvements as might be made and left standing on the premises was not a covenant running with the land so as to charge the assignee with the reversion. The court said that supposing that the tenants in this case had covenanted to make improvements, the court was of the opinion that it would have been a covenant not running with the land and not binding upon the assignee or the assignor of the reversion. The court considered that point settled directly and conclusively by Spencer's case, because the assignee was not responsible in the covenant unless he had been bound in it by express words. The court said that there can be no difference in the legal construction of a contract to erect a wall and one to build a house, and therefore if the lessees had covenanted to build upon the leased premises, it would have been a per-

sonal covenant obligatory upon those expressly bound
by it not running with the land.

The same rule was announced in *Brooks* v. *Smith*,
Thompson's Tennessee Cases, 296, and also, in *Cronig*
*v. Watkins*, 1 Tenn. Ch. 119.

In *Cook* v. *Milwaukee & St. Paul Railroad*, 36 Wis. 45,
a covenant by a grantee in a conveyance of a railroad
right of way as part of the consideration for such con-
veyance to construct farm crossings and cattle guards
on the premises was held not to run on the land so as to
bind the lessee of such grant, though he had notice of
the covenant where such grantee bound itself and the
word, assigns, was not used.

In *Gray* v. *Cuthbertson*, 2 Chitty, 482, it was held that
a covenant in a lease that fruit trees therein planted
by the lessee should be delivered up at the end of the
term and the same be paid for by the lessor did not
run with the land so as to bind the assignee of the lessor
without his being named in the covenant.

Spencer's case was followed by the New York court
in the case of *Cole* v. *Hughes*, 54 N. Y. 444.

The case of *Brown* v. *So. Pac. R. R. Co.*, 47 Law Rep.
Ann. (Ore.) 409, is exactly like the case at bar. In that
case the grantors in a deed to a railroad company cove-
nanted to build a fence along the railroad or not to hold
such railroad responsible for any damage to stock be-
longing to them without any mention of assigns in the
deed. The court held that the covenant was personal to
the grantors, that it did not run with the land, and was
binding upon them alone.

We submit therefore on the strength of the authorities
cited above that the lower court ruled correctly in sus-
taining the demurrer to the defendant's special plea.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a judgment awarding appel-
lee the sum of two hundred and fifty dollars alleged to

be due him under section 4058 of the Code on account of appellant's failure to construct and maintain the necessary stock gaps and cattle guards where its right of way passes through his inclosed land.

One of the reasons assigned for a reversal of the judgment rendered below is that the court erroneously sustained a demurrer to a plea in bar, which alleged, in substance, that the deed by which appellant obtained its right of way across the land from a former owner thereof, through whom appellee now claims by mesne conveyances, contained the following covenants and warranties: "It is further understood and agreed that the grantors herein, in consideration of the aforesaid sum, relinquish and acknowledge full and complete satisfaction for any and all damages of whatever nature or kind sustained by them in laying out and constructing said railroad through the aforesaid land, and for any and all failures to place, construct, and maintain plantation road crossings, stock gaps, and cattle guards thereon. It is further understood and agreed that the grantors herein are to construct and maintain a good substantial wire fence on both sides of said railroad company's right of way across said land, said fence is to be constructed out of posts placed eight feet apart and with plank one inch by six inches and with barbed wire and the same is to be placed so as to make a good and substantial fence and amply sufficient to turn any and all stock. Said railroad company is further relinquished and relieved from placing any stock gaps, cattle guards, or other plantation road crossings or any other crossings via said right of way across said land."

The ground upon which it is sought to uphold the action of the court in sustaining the demurrer is that these covenants are not such as run with the land, and therefore are not binding upon appellee. It will be observed that this plea sets up two distinct defenses: (1) A release of appellant by a former owner of the land, from whom it obtained its right of way, from any obligation

"to construct and maintain plantation road crossings, stock gaps, and cattle guards;" and (2) a covenant of a former owner of the land "to construct and maintain a good, substantial wire fence on both sides of said railroad company's right of way across said land, . . . amply sufficient to turn any and all stock." The first of these defenses presents no question of a covenant running with the land. The effect of section 4058 of the Code, by which is imposed upon a railroad company the duty to construct and maintain stock gaps and cattle guards where its right of way passes through the land of another, is simply to burden such right of way with an easement or servitude for the benefit of the owner of the land through which it passes; the right of way being the servient, and the land through which it passes being the dominant, tenement. Such an easement or servitude may be released by deed from the owner of the dominant tenement to the owner of the servient tenement, and, when so released, it ceases thereafter to be an appurtenance of such dominant tenement. 10 Am. & Eng. Ency. Law (2 Ed.), 432; 14 Cyc. 1191. The fact that this servitude is created by statute is immaterial. It is created primarily for the benefit of the landowner, and this benefit we know of no reason why he should not waive. *Madison* v. *Mo. Pac. Ry.,* 60 Mo. App. 599.

In *Railroad Co.* v. *Spencer,* 72 Miss. 491, 17 South. 168, the court held that, in order for a railroad company to comply with the statute, its cattle guards must "extend across the entire right of way, unless the adjoining landowner has waived the requirement by contracting to maintain fences up to a shorter one." If the landowner can relieve the railroad company of a portion of the burden imposed upon it by this statute for his benefit, he can, of course, relieve it of the whole burden. Since appellant holds its right of way free from burden imposed upon it by the statute of constructing and maintaining stock gaps and cattle guards, it becomes unnecessary

for us to determine whether or not the covenant by appellee's grantor to build and maintain the fence runs with the land.

For the error in sustaining the demurrer to this plea, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*